## HEARSEY v. CITY OF NEW ORLEANS et al.

### No. 17253.

Court of Appeal of Louisiana. Orleans,

Nov. 27, 1939.

Rehearing Denied Jan. 9, 1940.

Writ of Certiorari Denied March 4, 1940.

Daly & Hamlin, of New Orleans, for appellant.

St. Clair Adams & Son, of New Orleans, for R. P. Farnsworth & Co., Inc., and Ætna Casualty and Surety Co., appellees.

Gus A. Llambias, of New Orleans, for Sewerage and Water Board of New Orleans, appellee.

Francis P. Burns and Wm. Boizelle, both of New Orleans, for City of New Orleans, appellee.

McCALEB, Judge.

The plaintiff, Mrs. Henrietta M. Hearsey, seeks to recover from the defendants, City of New Orleans, Sewerage & Water Board of New Orleans, R. P. Farnsworth & Company, Inc., and Ætna Casualty & Insurance Company, the sum of $512 representing damages allegedly sustained by her property as a result of the defendants' negligent acts in the performance of certain public improvements.

On May 20, 1936, the City of New Orleans and the Sewerage & Water Board entered into a written contract with R. P. Farnsworth & Company, Inc., whereby the latter was employed to lay water mains under certain public streets in the City of New Orleans. For the faithful performance of this undertaking, the contractor executed a bond with the Ætna Casualty & Insurance Company as surety thereon. This contract provided, among other things, for the installation of an underground water main on Willow Street extending from Nashville Avenue to and across State Street.

The plaintiff is the owner of a triplex apartment building situated on the corner of Willow and State Streets which is erected on ground measuring 52 foot front on State Street and 70 foot front on Willow Street. She contends that the contractor was negligent in the performance of the work of laying the water main on Willow Street and that, as a direct result thereof, her property was damaged. The specific charges of negligence contained in

plaintiff's petition are, in substance, as follows:

That the contractor, in excavating Willow Street, used large drills to break the street pavement, a pile-driving outfit, a ditch-digging and excavating outfit equipped with a steam shovel and paraphernalia and a machine incident to the use thereof; that it operated said machinery in such a manner that the ground upon which her building stood severely shook, vibrated and trembled resulting in the sinking of the street, the sidewalk and the ground upon which said building was erected and damaged the house as a consequence of the settlement of its foundations; that the equipment and machinery used was not such as could be properly and safely employed in the residential districts of New Orleans; that the steam shovel and other machinery was extremely large and far in excess in tonnage, size and type of that which should have been used in work of this character; that the vibrations caused by the operation of the machinery resulted in the splitting of the ground and general subsidence of the soil contiguous to the work being done and that the contractor used this machinery of excessive tonnage and size for the sole purpose of completing its contract as speedily as possible.

Plaintiff further alleges that, as a consequence of the foregoing acts of the contractor, her building sustained the following damage:

"Front of building settled and front steps, entrances to apartments and porches gave way and parted from the main portion of the building; ceilings and walls of living room and front bedroom of #2431 State Street (lower apartment) cracked; ceilings and walls of living room of #2433 State Street (upper apartment, Clara Street side) cracked; ceilings and walls of living room, dining room and kitchen of #2435 State Street, (upper apartment, Willow Street side) cracked; windows and doors out of line and in need of resetting; entire front and sides of building in need of shoring and leveling."

In addition to the contractor and its bondsman, Ætna Casualty & Insurance Company, the plaintiff has included the City of New Orleans and the Sewerage & Water Board of New Orleans as party defendants to the case on the theory that they supervised, directed and controlled the work performed by the contractor.

The main defense to the suit is that the contractor was without fault in the premises; that the laying of the water main was performed in strict accordance with the terms and conditions of the contract and that the damage suffered by plaintiff did not occur as a result of the work. Other defenses, alternatively pleaded by the defendants, relate solely to their individual responsibility as between themselves in the event the plaintiff should be successful in proving that the damage she sustained was occasioned by the work.

After hearing the case on its merits, the district judge was of the opinion that the plaintiff had failed to prove either that the contractor was guilty of negligence or that the damage to her building was caused by any act, negligent or otherwise, of the defendants. He accordingly dismissed her suit. Hence this appeal.

The primary question to be determined in this matter is one of fact, viz: whether the damage sustained by plaintiff's building has been occasioned as a consequence of the work of laying the water main in Willow Street adjacent to her property.

Plaintiff testified, in substance, that, during the early part of July 1936, a Mrs. Gross, one of the tenants in the apartment building owned by her, telephoned her and complained of the noise and vibrations taking place as a result of the work being done by the contractor in Willow Street; that she immediately went to the premises and, upon arriving there, discovered that the operation of the contractor's machinery was causing her building to shake and vibrate; that the chinaware of her tenant was rattling in the kitchen and that Mrs. Gross was in a nervous condition as a result of the work being performed. She further stated that she made an inspection of the premises and found that the walls were receding from the baseboards; that the moulding was receding; that the ceiling was cracking and that, in the corner of one of the living rooms, there was a crack fully an inch wide running from the ceiling down to the floor. She declared that, after she inspected the premises occupied by Mrs. Gross, she went to the adjoining apartment on the Clara Street side of her property occupied by a Mrs. Tricou and to the lower apartment, which was rented to a Mrs. Ford, and that these apartments exhibited damage similar to that contained in

the Gross apartment. She also asserted that she did not make a minute inspection of the equipment used in the excavating work; that she knows nothing about machinery but that, as far as she could tell, there was a large steam shovel parallel to the Willow Street side of her building; that the vibrations of this steam shovel, which was very close to her building, damaged it and that she made a protest to one of the men in charge of the work. She further testified that, prior to the time the work was begun by the contractor, her building was in fine condition; that as soon as the work started her tenants began calling her up informing her that the building was being damaged; that cracks were showing on the ceiling particularly in the apartment on the corner of State and Willow Streets; that, after the work was completed by the contractor, her building was in such bad condition that she was compelled to hire Mr. Herbert McFaul, a contractor, to repair the damage and that the cost of making the repairs amounted to $512.

Plaintiff's testimony, with respect to the vibrations caused by the machinery and the damage to her building, is corroborated by the evidence of Mrs. Ford and Mrs. Tricou who were her tenants at the time the work of laying the water main was being performed.

Mr. Herbert McFaul, the contractor who repaired plaintiff's premises, also testified in her behalf. He merely stated that he was employed by her to make certain repairs to her building and that he was paid for his work.

The defendants produced two witnesses, Mr. J. C. Bernard and Mr. J. M. LeDoux. Mr. Bernard stated that he was the superintendent in charge of the work performed by Farnsworth & Company on Willow Street and that, in laying the water main, the following machinery and no other was used:

"* * * an air compressor with paving-breakers for cutting the pavement, and we had a small 301 Koehring crane with a ¾-yard clam shell bucket, and we had one suction pump. That was all the equipment we had at that time on the job."

This witness further stated that the work was performed in accordance with the plans and specifications of the contract with the Sewerage & Water Board; that the equipment used by the contractor was similar in size, type and weight to that employed by the City of New Orleans, the Sewerage & Water Board and other contractors when engaged in the work of laying sewerage and water mains; that the laying of the pipe and excavating work done on Willow Street did not cause any subsidence in the soil and that the water table was not lowered in any respect. He further asserted that the Koehring crane, which was used for the excavating work, moves very slowly and that the vibrations caused by the operation of this crane are no greater than that made by any large automotive truck operated in the streets of New Orleans.

The testimony of Mr. Bernard is fully supported by the evidence of Mr. LeDoux, an engineer of the Sewerage & Water Board, who supervised the performance of the work on Willow Street.

Counsel for the plaintiff maintain that our brother below was in error in holding that plaintiff did not prove negligence on the part of the contractor or that the damage to her building was caused by any act, negligent or otherwise, of the defendants. They argue that the plaintiff's evidence has not been contradicted by the defendents; that this evidence exhibits that the building was in perfect condition prior to the time the work was performed on Willow Street and that the building vibrated and cracked as a result of the operation of the machinery employed on the job.

We entertain the view, however, that the case was correctly decided below. Preliminarily, it should be noted that plaintiff charges in her petition that the damage occasioned by her building resulted from a subsidence of the soil and that this subsidence was caused by the negligent manner in which the machinery of the contractor was operated. This averment is not sustained by the evidence. The defendants' witnesses (who are experts) expressed the opinion that the laying of the water main did not lower the water table or cause any subsidence of the soil and the plaintiff and her witnesses do not attempt (or pretend to be qualified) to rebut their testimony.

As a matter of fact, the evidence submitted by the plaintiff is to the effect that the building was damaged because of the excessive vibrations caused by the operation of the machinery used by the contractor and she and her witnesses vaguely

suggest that the equipment employed was not only unsuitable for the purpose for which it was used but that it was operated in a faulty manner. But here again we find that the indefinite and uncertain guesses of plaintiff and the two ladies testifying on her behalf are clearly rebutted by the evidence produced by the defense. Messrs. Bernard and LeDoux, who superintended the performance of the work of the contractor, are skilled men and they were able to give expert testimony as to the facts of the case. They assert that the equipment used by the contractor was of the kind and quality usually employed in the laying of water and sewer mains in New Orleans and that the vibrations caused by the operation of the crane and other machinery was not greater than that produced by a truck operated upon the city streets.

It is to be observed that this is not a case for the application of the doctrine or res ipsa loquitur, nor is it a case where a plaintiff should be permitted to recover in the absence of expert proof respecting the cause of the damage sustained. The plaintiff and her lay witnesses were not qualified to testify with respect to the sound construction and condition of her property prior to the time the work was performed on Willow Street. Their opinion that the structure was in good condition cannot be accepted as correct in a case of this kind. No evidence was tendered by her to show the condition of the foundations of the building prior to the time it was damaged nor was there any proof of a negative character submitted for the purpose of demonstrating that the damage was not produced by a subsidence of the soil, which is a common cause for the sinking of foundations of buildings in New Orleans located in the vicinity of plaintiff's property. It was necessary for the foregoing factors to be eliminated in order to warrant the deduction that the work performed on Willow Street was the sole and exclusive cause of the damage.

It is significant that Mr. McFaul, the contractor who repaired the premises and who testified for the plaintiff, was not asked to give his opinion respecting the cause of the damage. As an experienced building contractor, he would have been fully qualified to voice his opinion on this question and we cannot understand why plaintiff's counsel failed to elicit such valuable evidence from him.

We believe that, in matters of this type, where it is contended that the damage to property is attributable to vibrations or other external forces disconnected with the structure itself, the testimony of persons skilled in the building of houses or other works is vital to the presentation of a prima facie case. There may be numerous reasons ascribed for the cracking of the walls of a house and a person without experience or special training in the art of building is not in a position to express a view as to the cause.

It is contended by counsel for plaintiff that it was not required of her to show negligence on the part of the contractor forasmuch as she is entitled to the redress accorded by Article 1, Section 2 of the Constitution of 1921 providing that "private property shall not be taken or damaged except for public purposes and after just and adequate compensation is paid". We find it unimportant to discuss her rights under the quoted article because she has failed to prove, to our satisfaction, that the public work performed on Willow Street was the direct and proximate cause of the damage sustained by her property.

For the reasons assigned, the judgment appealed from is affirmed.

Affirmed.