301 So.2d 657 (1974)
Dewey WILLIAMSON et ux., Plaintiffs-Appellees,
v.
GULF COAST LINE CONTRACTING COMPANY, INC., Defendant-Appellant.
No. 4717.
Court of Appeal of Louisiana, Third Circuit.
October 16, 1974.
*658 Plauché, Smith & Hebert, by James R. Nieset, Lake Charles, for defendant-appellant.
Hunt, Godwin, Painter & Roddy, by David Painter, Lake Charles, for plaintiffs-appellees.
Before FRUGE, HOOD, and DOMENGEAUX, JJ.
HOOD, Judge.
Mr. and Mrs. Dewey Williamson instituted this suit against Gulf Coast Line Contracting Company, Inc., demanding damages for personal injuries sustained by Mrs. Williamson when she allegedly stepped into an improperly filled hole dug by defendant's employees. The trial court rendered judgment for plaintiffs, and defendant appealed. We affirm.
The issues presented are whether defendant was negligent, and if so, whether Mrs. Williamson also was negligent barring plaintiffs from recovering.
The accident which gave rise to this suit occurred about 4:00 P.M. on Monday, October 23, 1972, in the driveway leading from the street into plaintiffs' home, in Westlake, Louisiana.
Mr. and Mrs. Williamson and their niece, Cavaline Duplechain, left the Williamson home in Westlake on Friday, October 20, to visit relatives in Elton over the weekend. They rode in a pickup truck covered or equipped with a camper, owned by plaintiffs. Shortly after their departure on that date, employees of the defendant company dug a trench across plaintiffs' front lawn and across their driveway, the purpose of the trench being to enable South Central Bell to lay an underground telephone cable along that route. Defendant had entered into a contract with South Central Bell, under the terms of which defendant agreed to dig a trench about two feet deep, and from four to six inches wide, along the route where the cable was to be laid. The trench was dug in accordance with the plans and specifications furnished by South Central Bell to defendant, the cable was laid in it, and the trench was then refilled by defendant.
Plaintiffs returned to their home about 4:00 P.M. on Monday, October 23. Mr. *659 Williamson drove his pickup truck into the driveway leading from the street in front of his home to his garage. The truck was driven over and across the refilled trench which traversed the driveway, and it was parked so that the back of the truck was near the line where the trench had been dug. Immediately after the truck was brought to a stop in that position, Mrs. Williamson got out of it through one of its side doors, walked around behind it, and climbed into the back end of the truck, her purpose being to remove some things from the part of the vehicle which was covered by a camper. As she backed out of the opening in the extreme back end of the camper, carrying some clothes, she stepped on the rear bumper of the truck with her left foot, and then stepped to the ground with her right foot. She contends that her right leg then sank into a hole up to her hip, causing her to fall and to injure her back.
A heavy rain occurred in Westlake over the weekend. It rained so hard on Saturday, October 21, that the crew which dug and refilled the trench on plaintiffs' property had to discontinue working that day because of the rain. All parties concede that the lawn and driveway at plaintiffs' residence was very wet during that weekend and on Monday afternoon when plaintiffs returned to Westlake.
The witnesses disagree as to whether there was a hole in the driveway at the time this accident occurred. Glenn Jones, the foreman of the crew employed by defendant to dig the trench, testified that after the cable had been laid his crew refilled the trench and properly "tamped" the dirt in it on the same day, Friday, under his immediate supervision. He feels certain that there was no hole in the driveway when his crew left the job Friday afternoon. He stated that there was a small amount of shell on the driveway when the trench was dug, and that South Central Bell intended to put some more shell on it after this work was completed, but that the additional shell had not been delivered before this accident occurred. Jones testified that on the following Monday morning he "passed" the driveway and "did not see any holes at all." He was informed on Tuesday morning that the accident had occurred, and he stated that he inspected the driveway on that date and "did not see any hole," except very shallow ones, the largest being not more than three inches deep.
Both of the plaintiffs testified that they noticed nothing unusual about the driveway when they returned to their home on Monday afternoon immediately before the accident occurred. They stated that they saw no hole in the driveway, and that they were not aware of the fact that a trench had been dug across it until Mrs. Williamson was injured. Mr. Williamson stated that "it wasn't no hole there, until she stepped on the ground, and the ground sunk in with her," and that "it was like it was just level ground there." The substance of plaintiffs' testimony, as we view it, is that there was a dangerous hole at that point in the driveway, but that the hole and the danger could not have been seen or detected by a reasonably prudent person because of the fact that the hole was filled with mud. Plaintiffs insist that Mrs. Williamson's entire right leg went into the hole, up to her hip. Their testimony is supported by that of Mrs. Williamson's nephew and that of her sister. Her nephew helped to pull her out of the hole and her sister arrived at the scene shortly after the accident occurred. Plaintiffs' testimony is also supported in all particulars by that of Mrs. Williamson's niece, Cavaline Duplechain, except that the latter stated that when the truck turned into the driveway just before the accident occurred she, unlike the other occupants of the truck, noticed that something like a trench had been dug across the driveway, and she commented to plaintiffs that it "looked like something had been dug."
The trial judge found that there was a hole in the driveway as stated by plaintiffs, and that the accident resulted from the negligence of defendant's employees in not properly tamping the dirt *660 after the trench was filled and in failing to add shell to the surface of the driveway after the dirt had been tamped. He concluded that there was nothing on the surface of the driveway where the trench had been dug to warn anyone that it had been soaked with water and would give way under the weight of a person's foot, and that plaintiffs "had no indication that a danger existed when it was not apparent to the average person." We cannot say that the trial judge erred in arriving at those conclusions, and we accept his factual findings as being correct.
An injured party may maintain an action against a contractor for damages sustained by that party and caused by the fault or negligence of the contractor, even though no privity of contract exists between them. Marine Insurance Company v. Strecker, 234 La. 522, 100 So.2d 493 (1957); Littleton v. B & R Construction Co., 266 So.2d 560 (La.App. 4 Cir. 1972). In order to recover in such an action, as in any other tort suit, the plaintiff must show by a preponderance of the evidence that the contractor was negligent and that his negligence was a proximate cause of the injury. Myevre v. Boh Brothers Construction Company, 192 So.2d 859 (La.App. 4 Cir. 1966); Monteleone v. Boh Brothers Construction Company, 200 So.2d 402 (La.App. 4 Cir. 1967).
The issue presented here is almost identical to that considered by the Court of Appeal, First Circuit, in Atkinson v. St. Paul Insurance Company, 263 So.2d 85 (La.App. 1 Cir. 1972). In that case plaintiff stepped in a hole which remained in the ground after the removal of a fence post. A general contractor had removed a fence from a part of the LSU campus, and had filled and hand tamped the post holes from time to time after rains had occurred. The court held that it was "probable that the hole depressed over a period of time due to rain and natural erosion superimposed over the improper filling and/or tamping by the said contractor," and it affirmed the judgment of the trial court decreeing that the defendant contractor was liable in damages.
We agree with the decision rendered in Atkinson, and we think that decision is applicable here. Our conclusion is that the injuries sustained by Mrs. Williamson resulted from the negligence of defendant in failing to properly fill and tamp the trench which it had dug across the driveway of plaintiffs' home.
We turn now to the question of whether plaintiffs are barred from recovery because of contributory negligence on the part of Mrs. Williamson.
Defendant points out, correctly, that a person is deemed to have seen that which a reasonably prudent observer could have seen or should have seen under the same or similar circumstances. Fortenberry v. McCoy, 233 So.2d 320 (La.App. 1 Cir. 1970); Higgins v. Louisiana Fire Insurance Company of Baton Rouge, 249 So.2d 289 (La.App. 1 Cir. 1971); Turner v. Aetna Casualty and Surety Company, 175 So.2d 304 (La.App. 2 Cir. 1965).
We find, as did the trial judge, that immediately before this accident occurred the hole in plaintiffs' driveway was filled with mud, that that part of the driveway had the appearance of having a hard surface as did the surrounding area, and that a reasonably prudent observer likely would not have observed the danger. We agree with the trial court, therefore, that Mrs. Williamson was not chargeable with contributory negligence in having failed to observe that there was a dangerous hole in the driveway before she stepped in it. We conclude that plaintiffs are not barred from recovery because of the contributory negligence of Mrs. Williamson.
For the reasons assigned, the judgment appealed from is affirmed. The costs of this appeal are assessed to defendant-appellant.
Affirmed.